Filed 3/14/22  P. v. Abad CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079492 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI 1300181-2) |
| RUBEN ABAD, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Bernardino County, Eric M. Nakata, Judge.  Reversed and remanded with directions.

Eric S. Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General for Plaintiff and Respondent.

Defendant Ruben Abad pleaded no contest to second degree murder after this court reversed his first degree murder conviction with a robbery/murder special circumstance (*People v. Abad* (Jun. 15, 2015, D067449) [nonpub. opn.]).  He appeals from an order denying his Penal

Code[1] section 1170.95 petition for resentencing. Abad contends the trial court erred by summarily denying his petition based on its own factual determinations from the trial evidence and on this court's statement in our prior opinion in his matter that substantial evidence supported his murder conviction and the special circumstance finding. He asks us to reverse the order and remand with directions that the court issue an order to show cause and hold an evidentiary hearing as required by section 1170.95.

The People concede the court erred when it denied Abad's petition before allowing his counsel to submit a brief. They also concede the court inappropriately relied on this court's holding that substantial evidence supported Abad's first degree murder conviction and special circumstance finding, given Abad pleaded no contest to second degree murder and was not convicted under a theory of felony murder. However, asking us to review the court's result and not its reasoning, they maintain any error was harmless because (1) Abad's no contest plea to second degree murder was as a direct aider and abettor based on a malice theory and thus he is ineligible for relief as a matter of law, and (2) after issuing its summary denial, the court considered counsel's brief and issued an addendum to its initial ruling.

We conclude Abad's no contest plea to second degree murder as an aider and abettor did not necessarily admit he committed the crime with malice aforethought. Likewise, Abad's stipulation to the trial and preliminary hearing transcripts or police reports as the factual basis for his plea did not categorically preclude him from showing he could make out a prima facie case for relief under section 1170.95. Because the court erred by concluding otherwise, we reverse and remand for the court to issue an order to show cause and conduct further proceedings under section 1170.95.

---

[1] Undesignated statutory references are to the Penal Code.

FACTUAL BACKGROUND

Abad broadly identified the trial evidence and police reports as part of the factual basis for his plea. We thus take the facts from our prior opinion, *People v. Abad*, *supra*, D067449.

A. *The Prosecution Case*

1. *The 1989 Investigation*

In March 1989, 56-year-old Santos was living in La Puente, California. On March 19 or 20, he called his sister to tell her he was coming to Las Vegas to live with her and seek work. On the morning of March 21, a pedestrian walking along Stoddard Wells Road off of Interstate 15 near Victorville (in San Bernardino County) found Santos's dead body off the side of the road in the desert. The pedestrian flagged down a passing car and the occupants called 911. While she waited, the pedestrian saw a knife on the ground on the other side of the road near marks that looked like people had been scuffling. She also saw what appeared to be drag marks leading from the knife to the body.

The San Bernardino County Sheriff's Department detective assigned to collect reports and evidence described the crime scene as a remote area on the way to a dumpsite, with no residences or businesses nearby, approximately two miles from the Stoddard Wells Road interchange with Interstate 15. No other roads were visible. The detective saw the knife, the scuffle marks, and the drag marks. He also saw blood near the knife and observed tire impressions on the east side of the road that continued on to the west side of the road, indicating to him that a vehicle made a U-turn leaving southbound on Stoddard Wells Road.

Santos's body was in some bushes. The detective saw blood and a clumping of dirt on the right side of Santos's body. Santos's pants and

3

underwear were off, but he was wearing laced-up shoes, socks, and a sweatshirt. There was foliage on Santos's sweatshirt consistent with being dragged through the desert. Santos's underwear were between his legs and his pants were about six feet from his body. There was no wallet in the pants.

At about 11:15 p.m. on March 21, the California Highway Patrol (CHP) found Santos's car abandoned on the shoulder of Highway 101 near North Hollywood in Los Angeles County. A records check indicated the car was involved in Santos's murder investigation, so CHP had it towed to a secure tow yard. When the detective was notified the next day that the car had been found, he had it brought to San Bernardino to be processed.

The driver's window was halfway down. The dashboard and windshield were broken and there was a shoeprint on the windshield. There was blood in the front passenger side of the car. There was a beer can in a caddy in front of the front seat, a soda can on the driver's side between the seat and the door, and an additional soda can and bottle under the driver's seat. The blood tracings were sampled and the car and its contents were processed for fingerprints.

The knife and sheath were also processed for latent fingerprints and DNA. No fingerprints were found, but blood on the knife was swabbed for DNA. Because of limitations in searching fingerprint databases in 1989, sheriff's personnel did not identify any suspects in Santos's murder.

On March 23, 1989, a forensic pathologist with the San Bernardino County Coroner's Office performed an autopsy on Santos. Santos was five feet, seven inches tall, and weighed 164 pounds. He had three stab wounds: two on the right lower chest and one on the side of his chest. The wound patterns were consistent with a single-edged knife and were consistent with

4

the size of the knife recovered from the crime scene. Santos's sweatshirt had caked blood and mud on the lower right front and had two tears in the area of his stab wounds, indicating the sweatshirt had ridden up and exposed his lower chest for the third stab wound. The pathologist identified the cause of Santos's death as stab wounds to his liver, which was enlarged and exhibited signs of chronic alcoholic liver disease and cirrhosis. Santos likely would have bled to death within 10 to 30 minutes, faster than someone with a healthy liver. Santos had a blood alcohol level of 0.28 percent, which would have slowed his reaction time. He had no defensive wounds.

The pathologist opined the marks in the dirt and the blood spatter at the crime scene were consistent with a struggle and the stabbing of Santos at that location. Santos also had postmortem abrasions across his lower back and buttocks consistent with being dragged.

On March 28, 1989, the detective learned that an employee at a campground near the Stoddard Wells Road/Interstate 15 interchange recovered a wallet with an identification card and other paperwork belonging to Santos. There was no cash in the wallet. Detectives interviewed the campground's assistant manager, N.A., who reported that the wallet had been found seven to 10 days earlier.

The detectives showed N.A. a photograph of Santos. She told them he had been at the campground about a week or two earlier with two other men and that they bought sodas or beer. N.A. described Santos as "fairly well dressed and clean-looking," and the other two men as younger and "quite ratty and transient-looking." She could not understand why they were together.

2. *The 2012 Investigation*

In 2012, detectives with the San Bernardino County Sheriff's homicide detail were investigating Santos's unsolved murder as a "cold case." Physical evidence from the crime scene led them to defendants. Abad's fingerprints and a palm print were on the exterior of the car windows in a position consistent with Abad sitting inside the car with the windows rolled down. Several of Solis's prints were also found inside the car, including one from the soda can that was between the driver's door and driver's seat. DNA analysis of blood specks found both inside the car (under the dashboard) and outside the car (the rear passenger door) matched Solis. Specks of Solis's blood were also found on Santos's sweatshirt.

a) *Abad's Interview*

The detectives went to Abad's home in Bakersfield. He agreed to give an audiotaped interview at the local police station.[2]

Abad was born in 1964, which would have put his age at 24 in March 1989. He said he was from Santa Maria, California and lived there until 2005 or 2006. Abad denied ever being in La Puente or on Interstate 15 heading toward Las Vegas in the late 1980's or early 1990's. He denied ever hitchhiking and, when the detectives showed him a photo of Santos's car, denied ever getting a ride in it. When detectives showed him a photo of Solis and stated his name, Abad said he was not sure if he recognized the photo and had only "heard of" Anthony and did not know Anthony's last name. One detective, however, noted that when he showed the photo, Abad's "shoulders and his body kind of stiffen[ed]," which was the first instance in which there was a "change in his body language." The detectives then showed Abad three photos of randomly selected Hispanic males to gauge his reaction. Abad slowly relaxed and resumed his original posture. Then the detectives showed

_____

[2]    Abad did not testify at trial, but the jury heard his interview.

6

him a photo of Santos and asked if he knew someone by that name. Abad said he did not recognize the photo or the name, but, once again, his posture changed. Abad relaxed again after a few minutes.

The detectives told Abad there was physical evidence tying him to Santos's car, and they accused him of stealing the car with Solis. Abad denied ever stealing any car, but offered no explanation for why physical evidence would indicate he had been in Santos's car. The detectives then told Abad they were investigating the murder of the car's owner and that they had evidence placing him in the car around the time of the murder. Abad asked to leave the interview. The interview ended and detectives took fingerprint and DNA samples from Abad pursuant to a search warrant.

b) *Solis's Interview*

The detectives interviewed Solis at a state prison in Chino, where he was serving a life sentence for a murder he committed in 1997 for which he was convicted in 2000. Solis initially denied any knowledge of the crime and claimed not to recognize Santos or Abad in photos the detectives showed him. Solis told the detectives they "really couldn't do a whole lot to [him]" because he "had already been doing time." However, when the detectives alluded to the death penalty, Solis relented and told them that he was present when Abad killed Santos without Solis's participation.

B. *Solis's Defense Case*

Solis testified at trial. He lived in Lompoc, California in 1989. In early 1989, he spent about two months in a residential group treatment home in Baldwin Park (in Los Angeles County), where he first met Abad. Abad arrived later, and their stays overlapped by about two or three weeks. They discovered they were both from the same general area, and Solis knew of Abad's brothers, but not Abad. Sometime in March 1989, Solis decided to

7

leave the home and return to Lompoc. Abad decided to leave with Solis and travel together back to the Lompoc/Santa Maria area. They walked from the Baldwin Park group home to a bus stop in neighboring La Puente, intending to catch a local bus to a Greyhound station in El Monte. They drank beer as they walked. Around 11:30 a.m., Santos drove by the bus stop in his car, circled back around, and offered defendants a ride. Defendants accepted.

The three men stopped at a liquor store, bought beer and wine, and then just "cruised around," "aimlessly." Around 2:00 p.m., when Santos decided he was too intoxicated to drive, Solis started driving, with Santos in the front passenger seat and Abad in the rear. Santos directed Solis to the freeway and passed out sometime later.

As Solis drove Santos's car north on Interstate 15 toward Las Vegas in the Victorville area, Santos woke up, said something to the effect of "what the F is going on?" and hit Solis on the right side of his face with a wine bottle. Solis began bleeding. As he attempted to block further blows by Santos, Solis exited the freeway to avoid crashing. As Solis was doing so, Abad reached over from the back seat and stabbed Santos twice. Solis was not previously aware that Abad had a knife.

After Solis stopped the car, Abad and Santos got out and fought. Solis saw Abad stab Santos a third time. As Abad and Santos moved toward the front of the car, Solis waited behind the rear passenger side to avoid being caught up in the fight. Solis lost sight of Abad and Santos and returned to the front passenger seat of the car; he was in no condition to drive because his head was still bleeding from being hit with the wine bottle.

Abad returned to the car a few minutes later without Santos, and he and Solis drove off toward Los Angeles. Worried how he would explain his bleeding if stopped by police, Solis intentionally broke the dash board by

8

kicking it and put his blood on it. As they drove through Los Angeles on the way to the Lompoc/Santa Maria area, Santos's car broke down on the freeway. At Abad's direction, defendants wiped their fingerprints from the car before abandoning it. They walked to a Greyhound station and took a bus to the Lompoc/Santa Maria area, where they parted ways and never spoke again.

Solis denied participating in the assault on Santos or in dragging the body away. He did not intend for Santos to be robbed or killed, and did not even know for certain whether Santos was dead when he was abandoned in the desert. Solis denied taking Santos's wallet or even knowing that he had one. He also denied ever going to the campground near the Stoddard Wells Road/Interstate 15 interchange. Solis admitted he initially lied to the detectives who interviewed him. He further admitted to a felony conviction in 1990 for robbery and assault, two felony convictions in 1992 for theft, and one felony conviction in 2000 for stabbing and theft.

C. *The Prosecution's Rebuttal Case*

M.C. testified that in 1989 he was a minister working with a network of churches that operated residential facilities in California and that Solis was a resident of the La Puente home in 1989. Solis left the home with another resident.

Pastor E.M. testified he was also involved with the La Puente group home. He recognized Solis as having resided at the home for less than a month. After Solis left the home, there were reports of property missing. Solis left the home with a person from the Santa Maria area. A few days after Solis left, he called E.M. and asked if he and the person he left with could return to the home. E.M. said no.

9

One of the detectives who interviewed Solis testified that during the interview, Solis was the first to mention that the cause of Santos's death was stabbing.

PROCEDURAL BACKGROUND

In 2013, a jury convicted Abad and Solis of first degree murder and found true a robbery-murder special circumstance. This court later reversed Abad's conviction based on prejudicial evidentiary error (*People v. Abad, supra*, D067449).

In 2016, Abad pleaded no contest to second degree murder, writing on the form as the factual basis for the plea that he did so "under [a] theory of aider and abettor." The following colloquy occurred at the plea hearing, at which he also identified as the factual basis for his plea the trial and preliminary hearing evidence as well as police reports:

"The Court: Mr. Abad, to a violation of Penal Code section 187[,subdivision] (a), second degree murder . . . murder in the second degree, as a felony and as a strike, how do you plead?

"Defendant Abad: No contest.

"The Court: Counsel join?

"[Abad's counsel]: Join.

"The Court: Acceptable to the People?

"[The prosecutor]: Yes.

"The Court: Factual basis to this case.

"[Abad's counsel]: Pursuant to our plea agreement as an aider and abettor and based on the previous documents, we stipulate.

"[The prosecutor]: Previous documents being the trial transcript?

"[Abad's counsel]: Trial transcripts, the preliminary hearings, two of them, and the police reports.

"[The prosecutor]: Stipulate.

"The Court: Thank you."

The trial court sentenced Abad to 15 years to life in prison.

In January 2020, Abad filed a form petition for resentencing under section 1170.95. By checking boxes, he asserted a complaint, information or indictment was filed against him allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, he was convicted at trial of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine, and he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189.[3] Further, Abad asserted he was not the actual killer, did not aid or abet the actual killer with intent to kill, was not a major participant in the felony nor acted with reckless indifference to human life, and the victim was not a peace officer in the performance of his or her duties. Abad requested appointment of counsel.

The People responded in part that Abad failed to set forth a prima facie case for relief, asking the court to take judicial notice of this court's June 2015 opinion (*People v. Abad*, *supra*, D067449), the information, and the records in the superior court case.[4] Abad was appointed counsel, and the court continued the hearing on his petition to September 17, 2020.

---

[3] Abad inexplicably did not place a mark on the form at paragraph 2b., which reads: "I pled guilty or no contest to 1st or 2nd degree murder in lieu of going to trial because I believed I could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine."

[4] We previously granted the People's unopposed request for judicial notice of the record in case No. D067449.

11

Before the continued hearing took place, however, the trial court summarily denied Abad's petition on grounds he failed to establish a prima facie case for section 1170.95 relief. The court's memorandum of decision states: "[Abad] was originally convicted of [first] degree murder and robbery and the special circumstance of robbery-murder was found true. On remand of the Court of Appeal, [Abad] pleaded to [second] degree murder on an aider and abettor theory. [¶] In this case, [Abad] was a major participant in the felony and acted with reckless indifference to human life during the course of the crimes. [¶] As the Court of Appeal . . . stated, 'We conclude substantial evidence supports defendant's convictions for felony murder and the true finding on the robbery-murder special circumstance' . . . . Moreover, the same appellate court stated: '[S]ubstantial evidence supports Abad's murder conviction.' . . . [¶] [Abad] has failed to establish a prima facie case for resentencing and this Court denies an [order to show cause] for failure to establish said prima facie case." (Some capitalization omitted.)

On September 10, 2020, Abad moved to set aside that decision. He argued his petition was sufficient to survive the prima facie showing, he had not had an opportunity to be heard, and he asked the court to set the matter for a hearing. Thereafter, the court issued an addendum to its ruling, observing it had presided over the trial and Abad's plea, and reiterating its

ruling that Abad "has failed to make a prima facie case for resentencing."[5] Abad filed this appeal.

## DISCUSSION

### I. *Amendments to the Felony Murder Rule and Natural and Probable Consequences Doctrine*

Effective January 1, 2019, the Legislature amended the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437; Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Lewis* (2021) 11 Cal.5th 952, 959; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)[6] It redefined "malice" in section 188 to add a requirement that all principals to a murder "shall act with malice aforethought" and that "[m]alice

---

[5] In full, the court's addendum states: "On September 10, 2020, [Abad], through his counsel . . . filed a 'Notice of Motion and Motion to Set Aside the Memorandum Decision and Associated Rulings." Nowhere in . . . section 1170.95 does the statute allow this. Moreover, [counsel's] declaration is NOT under the penalty of perjury. [¶] This Court was the trial court and the Court who took the plea. This Court heard evidence and arguments at trial. Even if [counsel] had filed his brief timely, his brief fails to establish a prima facie case, thus a hearing is not required. [¶] This Court, however, read and considered the brief. The conclusion as stated in the Memorandum of Decision remains: '[Abad] has failed to make a prima facie case for resentencing.' [¶] If [Abad] makes a prima facie showing that he . . . is entitled to relief the Court shall issue an order to show cause . . . . [¶] A hearing is not merited and is denied."

[6] Effective January 1, 2022, the Legislature amended section 1170.95 to allow a defendant to seek resentencing under its provisions for attempted murder and manslaughter convictions. (Sen. Bill No. 755; Stats. 2021, ch. 551, § 2.) It made other amendments to the law as we explain below.

shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), Stats. 2018, ch. 1015, §§ 2-3; *Lewis,* at p. 957.)

It also narrowed the classes of persons liable for felony murder under section 189. Now, "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [including robbery] in which a death occurs is liable for murder only if one of the following is proven: (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

In addition to these amendments, the Legislature put in place a procedure for defendants convicted of murder to seek resentencing if they believe they could not currently be convicted of that crime under the amended provisions of sections 188 and 189. (Sen. Bill No. 1437, § 4 [enacting section 1170.95]; *People v. Gentile*, *supra*, 10 Cal.5th at p. 843.) Thus, section 1170.95 allows those "convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1170.95, subd. (a).)

The defendant's petition must aver that (1) an accusatory pleading was filed against the petitioner allowing prosecution under the felony-murder rule or the natural and probable consequences doctrine (§ 1170.95, subd. (a)(1)); (2) the petitioner was convicted of first or second degree murder following a trial, or pleaded guilty to first or second degree murder in lieu of a trial at

14

which he or she could have been so convicted (§ 1170.95, subd. (a)(2)); and (3) the petitioner could not today be convicted of first or second degree murder because of the 2019 amendments to sections 188 and 189 (§ 1170.95, subd. (a)(3)).  (§ 1170.95, subd. (b)(1); *People v. Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

If the petition complies with these requirements, the court must appoint counsel if defendant has requested it and it "shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1170.95, subd. (c); *People v. Lewis*, *supra*, 11 Cal.5th at pp. 960, 962-963.) If the court finds the defendant has made a prima facie showing, it issues an order to show cause and then must hold a hearing to determine whether the defendant is entitled to relief.  (§ 1170.95, subd. (d)(1); *Lewis,* at p. 960.)  At this hearing, the prosecution bears the burden of proof beyond a reasonable doubt to show the defendant is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)  The court acts as an independent factfinder:  it must "determine on an individualized basis, after considering any new or additional evidence

offered by the parties, whether the defendant is entitled to relief." (*People v. Gentile*, *supra*, 10 Cal.5th at p. 855.)[7]

Where the analysis of the trial court's ruling turns on an interpretation of section 1170.95 and the lower court's authority to deny relief at the prima facie stage by engaging in judicial factfinding or the weighing of evidence, we review the ruling de novo. (See *People v. Duchine* (2021) 60 Cal.App.5th 798, 811.)

## II. *Contentions*

Abad's no contest plea to second degree murder forecloses any conclusion that he could be convicted of felony murder. Indeed, as the People

_____

[7] In 2021, the Legislature amended section 1170.95, subdivision (d)(3) to require the prosecution to prove beyond a reasonable doubt at the evidentiary hearing that the petitioner "is guilty of murder" under current law, and further provides that "[a] finding that there is substantial evidence to support a conviction for murder" is insufficient to meet this standard. (Sen. Bill No. 775 (2020-2021 Reg. Sess.) § 2.) It added new text governing the consideration of evidence at a section 1170.95, subdivision (d)(3) evidentiary hearing: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).) We do not address the split in authority as to what legal standard applies to this hearing. (See *People v. Duke* (2020) 55 Cal.App.5th 113, 123 (review granted Jan. 13, 2021, S265309) [applying "essentially" a substantial evidence standard]; compare *People v. Fortman* (2021) 64 Cal.App.5th 217, 226, review granted July 21, 2021, S269228 [holding the People are required to prove to the trial court beyond a reasonable doubt that the petitioner is guilty on a now-valid theory of murder].)

16

point out, he asserts "[t]here is no predicate felony involved in this conviction."[8]  Abad argues, however, that the "record of conviction is completely silent as to the acts and intent on which the plea to second [ ]degree murder is based, apart from the general statement that there was a 'factual basis' for the plea based on 'trial transcripts, the preliminary hearings, two of them, and the police reports.' "  Abad acknowledges that his plea agreement specified he was convicted on an aider and abettor theory, but he maintains "the record of conviction does not contain any indisputable finding that [he] harbored express or implied malice in the course of the offense" and "[t]he no contest plea is not an admission as to either the actus reus of actually killing Santos or the mens rea of harboring express or implied malice."  He compares his circumstances to those in *People v. Rivera* (2021) 62 Cal.App.5th 217, review dismissed and cause remanded January 19, 2022, S268405.

The People respond that the court did not err.  They point out the prosecution proceeded under theories of first degree premeditated murder and first degree felony murder at trial, and the jury was not instructed on either the natural and probable consequences doctrine or second degree felony murder.  They argue:  "Since no theory of vicarious liability could have

---

[8]    Thus, we need not address the issue—currently on review (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606)—of whether a felony murder special circumstance finding predating *People v. Banks* (2015) 61 Cal.5th 788 and *People v. Clark* (2016) 63 Cal.4th 522 precludes a defendant from making a prima facie showing of eligibility for resentencing relief.  (Compare *People v. Gomez* (2020) 52 Cal.App.5th 1, 17, review granted Oct. 14, 2020, S264033 [remedy to challenge a special circumstance finding is a petition for writ of habeas corpus, not a section 1170.95 petition for resentencing], with *People v. Smith* (2020) 49 Cal.App.5th 85, 94, review granted July 22, 2020, S262835 [special circumstance finding is not a categorical bar to resentencing relief].)

17

supported [Abad's] conviction under these circumstances, [Abad's] guilt could only have been based on the proposition that he directly aided and abetted a killing with malice." According to the People, "[b]y pleading no contest to second[ ]degree murder under circumstances where the prosecution was not proceeding under the natural and probable consequences doctrine or a second degree felony murder theory, [Abad] admitted he acted with malice aforethought when he pleaded guilty [*sic*] to second[ ]degree murder as a direct aider and abettor." They further maintain "[t]he absence of instruction and argument on a natural and probable consequences theory demonstrates that [Abad] was, at minimum, a direct aider and abettor, and thus ineligible for relief." The People ask us to hold Abad is ineligible for relief under section 1170.95 as a matter of law, and affirm the court's ruling on that ground based on its result, not its reasoning.

III. *Abad's Petition Made Out a Prima Facie Showing of Entitlement to Relief*

In determining whether a defendant has made a prima facie showing on a section 1170.95 petition, the trial court may examine the record of conviction "to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971; *People v. Mancilla* (2021) 67 Cal.App.5th 854, 863.) But "the prima facie inquiry under [section 1170.95,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts

18

refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, at p. 971.)[9]  Though appellate opinions are part of the record of conviction, their "probative value . . . is case-specific" and they " 'might not supply all answers.' " (*Id.* at p. 972.)  In "reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Ibid.*; *People v. Duchine*, *supra*, 60 Cal.App.5th at p. 815 ["the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues"].)  The " 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, at p. 972.)

Applying these standards, we agree that the trial court erred by summarily denying Abad's petition without issuing an order to show cause. The question is whether the superior court correctly ruled—without engaging in impermissible factfinding, weighing of evidence or exercising discretion (*People v. Lewis*, *supra*, 11 Cal.5th at p. 972)—that Abad failed to make a prima facie showing that he "could not be convicted of . . . second degree murder" because of the amendments to section 188.  (§ 1170.95, subd. (a)(3).) Stated another way, we decide whether Abad's record of conviction—his plea colloquy stating the factual basis as the trial and preliminary hearing

9    To "refute" means "to prove wrong by argument or evidence: show to be false or erroneous."  (Merriam-Webster's Dict. Online <https://www.merriam-webster.com/dictionary/refute> [as of March 14, 2022].)  The California Supreme Court's use of this phrase means it is not enough to say the record contains substantial evidence to support a conviction under a still-valid murder theory.  Such a finding indicates the record contains enough evidence to support a murder conviction, but it does not refute a claim that a defendant could not be convicted under current law or show as a matter of law that the claim is false.

transcripts as well as police reports—conclusively established Abad was ineligible for relief. (Cf. *People v. Duchine*, *supra*, 60 Cal.App.5th at pp. 815, 816 [in order to deny section 1170.95 petition at prima facie stage, record of conviction must conclusively establish the defendant "engaged in the requisite acts and had the requisite intent" to be guilty of murder under the new law; order denying section 1170.95 petition relief was reversed where lower court engaged in "judicial fact-finding on issues not conclusively resolved by the record of conviction"].) As we have summarized above, apart from acting as an aider and abettor, Abad's plea form did not further specify any particular facts, and the prosecutor did not summarize any relevant facts at the plea hearing.

Second degree murder is the unlawful killing of a human being with malice aforethought[10] but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a first degree murder conviction. (§§ 187, 189; *People v. Knoller* (2007) 41 Cal.4th 139, 151.) Under amended section 188, a principal must personally act with malice aforethought in order to be convicted of murder, making no exception for accomplices or second degree murder. (*People v. Gentile*, *supra*, 10 Cal.5th at p. 846, citing § 188, subd. (a)(3).) "By its terms, section 188(a)(3) permits a second degree murder conviction only if the prosecution can prove the defendant acted with the accompanying mental state of mind of malice

---

10     "Malice can be express or implied. It is express when there is a manifest intent to kill [citation]; it is implied if someone kills with "no considerable provocation . . . or when the circumstances attending the killing show an abandoned and malignant heart" [citation]. When a person directly perpetrates a killing, it is the perpetrator who must possess such malice. [Citations.] Similarly, when a person directly aids and abets a murder, the aider and abettor must possess malice aforethought." (*People v. Gentile*, *supra*, 10 Cal.5th at p. 844.)

aforethought. The prosecution cannot 'impute[] [malice] to a person based solely on his or her participation in a crime.' " (*Ibid.*) Section 1170.95 expressly permits a defendant convicted of second degree murder like Abad to avail himself of the resentencing petition procedure. (*Id.* at p. 847.)

But at the time of Abad's no contest plea, " 'the natural and probable consequences doctrine was an exception to the actual malice requirement'— i.e., the requirement of either express or implied malice." (*People v. Rivera, supra,* 62 Cal.App.5th at p. 231.) That is, "when a person aided and abetted a nonhomicide crime that then resulted in a murder, the natural and probable consequences doctrine allowed him or her to be convicted of murder without personally possessing malice aforethought. So long as the direct perpetrator possessed malice, and the killing was a natural and probable consequence of the crime the defendant aided and abetted, it did not matter whether the defendant intended to kill or acted with conscious disregard for human life." (*People v. Gentile, supra,* 10 Cal.5th at p. 845.) The law thus allowed a person to be convicted of second degree murder without acting with malice aforethought and malice could be imputed to a defendant under the natural and probable consequences theory. (*Id.* at p. 847.)[11]

---

[11] *Rivera* explains the difference between the natural and probable consequence doctrine and the implied malice concept of natural and probable consequences: "[I]mplied malice also incorporates the idea of 'natural and probable consequences,' but the two concepts are distinct. Whereas implied malice is based on 'the "natural and probable consequences" of a defendant's *own* act,' the natural and probable consequences doctrine was 'a theory of vicarious liability under which "[a]n aider and abettor [was] guilty not only of the intended, or target, crime but also of any other crime a principal in the target crime actually commit[ted] (the nontarget crime)" '—including murder—' "that [was] a natural and probable consequence of the target crime." ' [Citation.] 'Because a nontarget murder " '[was] unintended, the mens rea of the aider and abettor with respect to that offense [was] irrelevant and culpability [was] imposed simply because a reasonable person could have

21

Given the state of the law at the time of Abad's no contest plea to second degree murder, that plea did not admit he acted with express or implied malice that would render him ineligible for section 1170.95 relief. (Accord, *People v. Rivera*, *supra*, 62 Cal.App.5th at pp. 224, 235; *People v. Davenport* (2021) 71 Cal.App.5th 476, 484 [no contest plea to second degree murder and personal use of firearm did not bar relief as a matter of law, where defendant did not stipulate to the "exact factual basis for the plea" and no evidence at preliminary hearing conclusively refuted the allegation that his conviction rested on prohibited vicarious liability theories].) Abad's no contest plea "constituted an admission to the elements of [second degree murder] only, and not to any additional aggravating circumstances." (*People v. French* (2008) 43 Cal.4th 36, 50; but see *People v. Sample* (2011) 200 Cal.App.4th 1253, 1264, fn. 9 [*French*'s holding means issue of admissions must be determined on a case-by-case basis].) Though the factual basis for a plea may be established by counsel's stipulation to particular documents such as preliminary hearing transcripts and police reports (*French*, at pp. 50-51; *People v. Holmes* (2004) 32 Cal.4th 432, 442), "[a] defendant is not required to personally admit the truth of the factual basis of the plea . . . ." (*French*, at p. 50.) Absent an indication that a defendant admitted the truth of particular facts, the stipulation to a factual basis for the plea does not "constitute[] a binding admission for all purposes." (*Id.* at p. 52; *Rivera*, *supra*, 62 Cal.App.5th at p. 235.)

Nor did Abad's admission to the offense under an "aider and abettor theory" preclude relief. The California Supreme Court in *Gentile* explained: "Aiding and abetting is not a separate offense but a form of derivative

foreseen the commission of the [murder].'" '" (*People v. Rivera*, *supra*, 62 Cal.App.5th at pp. 231-232.)

liability for the underlying crime. [Citation.] Our law recognizes two forms of liability for aiders and abettors. [Citation.] First, under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' [Citation.] [¶] Second, under the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense)." (*People v. Gentile*, *supra*, 10 Cal.5th at p. 843.) "Unlike direct aiding and abetting liability, culpability under the natural and probable consequences theory does not require an accomplice to share the direct perpetrator's intent. Instead, '[a]ider and abettor culpability under the natural and probable consequences doctrine is vicarious in nature' and ' "is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense" ' may not be intended at all." (*Id.* at p. 844.)

Though a defendant convicted of murder for directly aiding and abetting that offense is ineligible for resentencing under section 1170.95 because that defendant has the requisite mental state (*People v. Offley* (2020) 48 Cal.App.5th 588, 595-596), here, Abad's plea did not admit any particular mental state, or facts establishing indisputably that he was a "direct" aider and abettor to Santos's murder. And the evidence underlying the factual basis for his plea did not indisputably establish he was only guilty as a direct aider and abettor. The case for Abad acting as a direct aider and abettor to murder is necessarily dependent on the credibility of Abad's codefendant

23

Solis. Under the circumstances, the trial court could not, without engaging in factfinding or exercising its discretion to decide how the evidence reflected on Abad's mental state, rule out the possibility that Abad could be guilty of second degree murder on the theory that he aided and abetted Solis's robbery of Santos, whose killing occurred during the commission of that offense. Because the record of conviction does not definitively refute the allegations of Abad's petition, the trial court was required to issue an order to show cause. (§ 1170.95, subd. (c).)

The People's arguments do not convince us otherwise. They assert based on *People v. Daniel* (2020) 57 Cal.App.5th 666, review granted February 24, 2021, S266336, review dismissed December 1, 2021, that if jury instructions indicate a jury was not instructed on either the natural and probable consequences doctrine or on the felony murder doctrine, a section 1170.95 petition must be denied without issuance of an order to show cause. It is true the jury at Abad's prior trial was not specifically instructed on accomplice liability under the natural and probable consequences doctrine.[12] Though jury instructions are part of the record of conviction and they are reflected in the trial transcripts, ultimately the law given to the jury during

---

[12] The court did somewhat vaguely instruct the jury that "[u]nder some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." The prosecutor did not distinguish between the two defendants during closing arguments: "[Santos] is a 56-year-old man. He is drunk. He is passed out. They could have both taken him. They could have thrown him into the desert. They didn't have to stab him. They could have just taken his car if they wanted to, but they didn't. They chose a weapon. They chose to use that weapon in such a way that caused Mr. Santos'[s] death." Later, the prosecutor argued, "We have them leaving the road going two miles off the freeway into a deserted area where there's no homes, nothing out there. And what do they do? They rob and kill this 56-year-old man who is drunk."

24

Abad's trial is not dispositive of the question here, where we overturned his convictions following that trial and Abad thereafter entered a no contest plea. Abad's no contest plea to second degree murder as an aider and abettor under the trial transcripts, preliminary hearing transcripts, and police reports necessarily required the court to consider and weigh all that evidence, which turned on the credibility of Abad's codefendant Solis, to determine the exact nature of Abad's conduct. Such evidentiary evaluation is not permitted in deciding whether Abad presented a prima facie showing.

The People also seek to distinguish *People v. Rivera*, *supra*, 62 Cal.App.5th 217, in which the defendant pleaded no contest to second degree murder, stipulating to the grand jury transcript as the factual basis for his plea. (*Id.* at p. 223.) The prosecutor did not recite any particular facts at the plea hearing. (*Id.* at p. 226, fn. 7.) The trial court ruled Rivera's plea to second degree murder was "with malice" and thus precluded eligibility for resentencing under section 1170.95 as a matter of law. (*Id.* at p. 232.) The Court of Appeal reversed. (*Id.* at p. 224.) There, the indictment alleged that the defendant " 'did willfully, unlawfully[,] and with malice aforethought murder . . . [the victim]' " and did so by means of lying in wait as a special circumstance. (*Id.* at p. 233.) But the appellate court held those generic allegations did not limit the People to prosecuting Rivera on any particular theory, and the indictment allowed the prosecutor to proceed on any theory of murder. Further, "where, as here, a defendant ultimately enters a plea to second degree murder, the allegation of a special circumstance requiring an intent to kill does not preclude prosecution based on the natural and probable consequences doctrine." (*Id.* at p. 234.) And his plea did not admit being the actual killer or to acting with actual malice. (*Id.* at p. 235.) The appellate court observed that because a plea does not require a defendant to admit the

25

truth of particular facts, Rivera's plea did not admit the truth of any evidence presented to the grand jury. (*Ibid.*)  It held a defendant who stipulates to a grand jury transcript as the factual basis for a plea may still make a prima facie showing of eligibility for relief by identifying a scenario under which he or she was guilty of murder only under a now-invalid theory, even if the record of conviction does not demonstrate that the indictment rested on that scenario, disagreeing with *People v. Nguyen* (2020) 53 Cal.App.5th 1154. (*Rivera*, at p. 224.)  It rejected the People's argument that ineligibility for section 1170.95 relief was established because the People did not rely on a natural and probable consequences doctrine or present evidence of any underlying target offense that could serve as a basis for that doctrine:  "We disagree with *Nguyen* to the extent it suggests that relief under section 1170.95 is precluded as a matter of law simply because there is no mention in the pre-plea record of an underlying offense that could support liability for felony murder or murder under the natural and probable consequences doctrine.  [Citation.]  In our view, when a petitioner disputes that the evidence presented at a pre-plea proceeding demonstrates his or her guilt under a still-valid theory of murder, and no ' "readily ascertainable facts" ' definitively prove otherwise, a trial court cannot deny a petition at the prima facie stage without resorting to ' "factfinding involving the weighing of evidence or the exercise of discretion." ' "  (*Id.* at p. 238.)

This case is more akin to *People v. Rivera, supra*, 62 Cal.App.5th 217 than it is not.  As we have explained, Abad's stipulation to the trial and preliminary hearing transcripts and police reports as a factual basis for his plea likewise do not definitely establish his ineligibility to section 1170.95 relief as a matter of law, where the evidence rests on Solis's credibility and requires the drawing of inferences as to Abad's mental state.  But it is

stronger than *Rivera* because the People presented evidence of a target offense, robbery, that could serve as the basis for a conviction for murder under the natural and probable consequences doctrine.

The circumstances of this case are unlike many of the other cases relied upon by the People, including *People v. Nguyen, supra*, 53 Cal.App.5th 1154, where the court held there could be no relief "as a matter of law" where defendant pleaded guilty to second degree murder but the preliminary hearing transcript showed the only theory was that he was a direct aider and abettor and the record was "devoid" of any underlying crime that would support a natural and probable consequences theory. (*Id.* at pp. 1166-1168.)[13] In *People v. Perez* (2020) 54 Cal.App.5th 896, review granted Dec. 9, 2020, S265254, cited by the People for the proposition that ineligibility may be determined from a record leading to a guilty or no contest plea, the record of conviction (preliminary hearing testimony) showed the defendant acted alone to kill his wife by striking her head repeatedly with a hammer, and admitted an allegation that he personally used a weapon in the murder's commission. (*Id.* at p. 907.) The defendant there did not aver in his section 1170.95 petition that he was not the actual killer, and he failed to identify in his reply brief or on appeal any factual scenario under which he was not the actual killer. (*Ibid.*) In *People v. Daniel, supra*, 57 Cal.App.5th 666 (rev. gr., S266336, rev. dism.), the defendant did not plead guilty or no contest; he was

---

[13]     Some of the People's cases are now uncitable, at least in part. (*People v. Soto* (2020) 51 Cal.App.5th 1043, review granted Sept. 23, 2020, S263939, review dismissed and remanded Nov. 17, 2021, ruled "non-citable and nonprecedential 'to the extent it is inconsistent with'" *People v. Lewis, supra*, 11 Cal.5th 952.) *Soto* involved the question of whether the defendant's conviction for second degree murder following his jury trial was, or could have been, based on the natural and probable consequences doctrine, making the jury instructions (and the absence of certain instructions) particularly relevant. (*Soto*, 51 Cal.App.5th at pp. 1054-1055.)

convicted following a jury trial of second degree murder for killing his girlfriend. (*Id.* at p. 670.) The Court of Appeal held the lower court's failure to appoint counsel was harmless, reasoning it properly relied on jury instructions at the defendant's trial to determine he was not entitled to section 1170.95 relief as a matter of law because he was "not '[a] person convicted of felony murder or murder under a natural and probable consequences theory . . . .' " (*Id.* at p. 677.)

We reverse the order denying Abad's petition and remand with directions to issue an order to show cause under section 1170.95, subdivision (c), and hold a hearing consistent with section 1170.95, subdivision (d). We express no opinion about Abad's entitlement to relief. (§ 1170.95, subd. (d)(2).)

## DISPOSITION

The order denying Abad's section 1170.95 petition for resentencing is reversed. The matter is remanded to the trial court with directions to issue an order to show cause (§ 1170.95, subd. (c)) and hold a hearing under section 1170.95, subdivision (d).

O'ROURKE, Acting P. J.

WE CONCUR:

AARON, J.

GUERRERO, J.

28